UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| EUGENE DEVBROW, </br></br> Plaintiff, </br></br> v. </br></br> STEPHAN GALLEGOS, *et al.*, </br></br> Defendants. | ) </br> ) </br> ) </br> ) </br> )   No. 3:10 CV 146 </br> ) </br> ) </br> ) </br> ) |

## OPINION AND ORDER

Eugene Devbrow, a prisoner confined at the Westville Correctional Facility ("WCF"), filed a *pro se* complaint and amended complaint pursuant to 42 U.S.C. § 1983, alleging that Correctional Captain Steven Gallegos and Correctional Lieutenant Jason Smiley ("Defendants") violated his federally-protected rights. The court screened Devbrow's amended complaint pursuant to 28 U.S.C. § 1915A, granted him leave to proceed against Defendants for their alleged destruction of irreplaceable documents he says were needed by his attorney to respond to a motion for summary judgment in a civil action in the Southern District, and alleged retaliation against him because he had filed a lawsuit against WCF officials. (DE # 18.)

Defendants have filed a joint motion for summary judgment pursuant to FED. R. CIV. P. 56, and Devbrow has responded. The standard for reviewing a summary judgment motion is the same regardless of whether a party is represented by counsel. *Outlaw v. Newkirk*, 259 F.3d 833, 836-837 (7th Cir. 2001).

> [T]he plain language of [FED. R. CIV. P.] 56(C) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

> party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986).

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, when the moving party has carried its burden under Rule 56(C), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, quotation marks, ellipsis omitted).

In support of their motion for summary judgment, Defendants submit their own declarations, and Devbrow's responses to interrogatories. Devbrow responded with an objection to the summary judgment motion, and also submitted portions of the Indiana Department of Correction ("IDOC") procedures for offender property, a property inventory sheet, a property confiscation notice for books from the Indiana Reformatory, what purports to be part of an e-mail from defendant Gallegos to other WCF officials, and documents related to a grievance Devbrow filed seeking the return of his property from storage. Devbrow did not submit his own declaration or affidavit. Defendants

filed a reply, in which they argue that Devbrow's exhibit C, which he labeled as an attachment to an e-mail sent by defendant Gallegos, is unauthenticated, contains hearsay, and is inadmissible. The court agrees that this submission is unauthenticated and inadmissible, and will strike Exhibit C. (DE # 60-1 at 6.)

## FACTS

On October 19, 2007, while housed at the Pendleton Correctional Facility, Devbrow filed a complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Southern District of Indiana, alleging deliberate indifference to his serious medical needs. (1:07cv1355 LJM, DE # 1.) On April 22, 2008, counsel appeared for Devbrow in that case. (*Id.*, DE # 21.)

In February 2009, Devbrow was housed at the WCF (DE #52-1 at ¶ 3), and had a large quantity of property stored in his bed area (DE # 52-1 at ¶ 4, DE # 52-2 at ¶ 3), including several boxes of paperwork. (DE # 52-1 at ¶ 9.) Devbrow has submitted the portion of the IDOC Operational Procedures for Offender Personal Property, 02-01-101, dealing with "offender legal materials," which establishes that prisoners may keep legal materials in a "personal property storage box" or a "correspondence box" in their bed areas but that any "excess legal materials that cannot fit into the offender's correspondence storage box or personal property box" are to be packed and placed in storage for him. (DE # 60-1 at 1.)

Correctional officers told Devbrow on several occasions that he had more property in his area than he was allowed, and that he needed to get rid of his excess

property. (DE # 52-1 at ¶ 5.) Devbrow, however, did not comply with these orders and defendant Gallegos eventually ordered defendant Smiley to advise Devbrow to pick what he really needed to keep in the dormitory and the rest of his property would go to storage. (DE # 52-1 at ¶ 10.) Defendant Smiley oversaw the removal of part of Devbrow's property from the dormitory, and told him that he could keep anything that would fit in his property box and that everything else would go to storage. (DE # 52-2 at ¶ 8.)

Defendant Smiley states in his declaration that "Devbrow had a large bag full of books and legal papers" (DE # 52-2 at ¶ 4), that "the legal books were returned to the library at the Pendleton Correctional Facility" where they belonged (DE # 52-2 at ¶ 5), and that "the legal work was placed in a box and placed in storage." (DE # 52-2 at ¶ 6.) Defendant Smiley declares that he did not review Devbrow's legal work, he simply counted the envelopes and placed all loose papers in the box. (DE # 52-2 at ¶ 7.) Defendants permitted Devbrow to keep two boxes of his property in his bed area; everything else was taken to the property room. (DE # 52-1 at ¶ 11.)

Both Defendants state under oath that they were not aware that Devbrow had filed lawsuits against WCF officials (DE # 52-1 at ¶ 13, DE # 52-2 at ¶ 13), and that they did not order the removal of his property because he had filed lawsuits against WCF employees. (DE # 52-1 at ¶ 12, DE # 52-2 at ¶ 12.) Devbrow has not submitted any admissible evidence that he filed a civil action against WCF officials in November 2009, nor has he submitted admissible evidence contradicting Defendants' sworn statements.

Accordingly, the court credits Defendants' statements that they were not aware of any prior lawsuits filed by Devbrow and did not remove his excess property from his living area in response to any prior lawsuits he had filed. Lieutenant Smiley states in his declaration that Devbrow was treated the same as any other inmate with an excessive amount of property in his bed area. (DE # 52-2 at ¶ 10.)

Devbrow alleges in his amended complaint that at least some of his property that was taken to the property room for storage was destroyed, including irreplaceable documents that were needed by his attorney to respond to a motion for summary judgment in 1:07cv1355 LJM. (DE # 16 at 7.) To support his claim that his property was destroyed, Devbrow relies on a notation on a offender grievance program return of grievance form. (DE # 60-1 at 7.) This form, however, is not a response on the merits to Devbrow's grievance, establishing that his property was destroyed. Rather, the form establishes that the grievance was returned to him by grievance officials in the mistaken belief that he was complaining about property he claimed had been lost, damaged or destroyed. This form has no bearing on whether or not any of Devbrow's property was destroyed after it was placed in storage.

Defendant Gallegos states in his declaration that he "did not inform any staff within the WCF that Devbrow's property should be destroyed," (DE # 52-1 at ¶ 14), and that it is his "understanding that Devbrow's property remained in the property room at the WCF and is still there." (DE # 52-1 at ¶ 15.) Defendant Smiley states in his declaration that he did not destroy Devbrow's property, (DE # 52-2 at ¶ 11), that he did

not inform anyone that Devbrow's property should be destroyed, (DE # 52-2 at ¶ 14), and that he "believes that Devbrow's property remained in the property room at the WCF and is still there."(DE # 52-2 at ¶ 15.) Devbrow has not submitted any admissible evidence contradicting Defendants' assertions.

There is no admissible evidence in the record establishing that any of Devbrow's property was destroyed. On the other hand, there also no conclusive evidence from which the court can make a definitive finding that all of Devbrow's property that was taken to storage is still there. Giving Devbrow the benefit of the inferences to which he is entitled as the nonmoving party, the court will assume, for the purposes of this memorandum, that at least some of Devbrow's property was destroyed, including documents related to 1:07cv1355 LJM. But the court must credit Defendants' unopposed sworn statements that they were not responsible for the destruction of any of Devbrow's property stored in the property room.

The record in 1:07cv1355 LJM establishes that the defendant moved to dismiss that action based on the statute of limitations, and that on May 22, 2012, the district court treated the motion as a motion for summary judgment and granted summary judgment, concluding that "[b]ecause the statute of limitations for Devbrow's Eighth Amendment claims is two years, he had until April 27, 2007, in which to file suit. He did not file this lawsuit until October 19, 2007." (1:07cv1355 LJM, DE # 161 at 9.)

## DEVBROW'S CLAIM THAT DOCUMENTS RELATED TO 1:07cv1355 LJM STORED IN THE WCF PROPERTY ROOM WERE DESTROYED

Devbrow alleges that Defendants took his legal papers from him on December 14, 2009, and eventually destroyed them. The Fourteenth Amendment provides that state officials may not deprive a person of his property without due process of law, but a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional deprivation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). The Indiana tort claims act provides a sufficient remedy for loss of personal property. *Hossman v. Spradlin*, 812 F.2d 1019, 1023 (7th Cir. 1987); *Wilson v. Civil Township of Clayton*, 839 F.2d 375 (7th Cir. 1988). Under *Hossman v. Spradlin*, however, the loss of legal materials, is not merely a property loss if the papers are irreplaceable:

> Appellant, in opposition to defendants' motion for summary judgment, could and should have stated with specificity exactly what materials he was deprived of and how such deprivation resulted in his being denied the meaningful access to the courts to which he is entitled. Each of the cases cited by appellant in support of the contention that destruction or loss of a prisoner's legal papers by prison officials states a valid cause of action under § 1983 deals with a situation involving papers or documents crucial or essential to a pending or contemplated appeal.

*Id.* at 1022.

Devbrow asserts that the allegedly destroyed documents were irreplaceable and that their destruction violated his right of access to the courts because it impaired his attorney's ability to prosecute his case in 1:07cv1355 LJM. To establish a violation of the

right to access to the courts, an inmate must establish that prison or jail officials impaired his access to the courts and show that he suffered an actual injury. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that *Bounds v. Smith*, 430 U.S. 817, 828 (1977), did not eliminate the actual-injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts). The actual-injury requirement applies even in cases "involving substantial systematic deprivation of access to court," including the "total denial of access to a library," or "an *absolute* deprivation of access to all legal materials." *Lewis v. Casey*, 518 U.S. at 353 n. 4 (emphasis in original).

Devbrow's amended complaint (DE # 16) was not specific as to the nature of the legal materials Defendants allegedly confiscated, how they were necessary for his litigation efforts, or why they were irreplaceable. In interrogatory number two, Defendants asked Devbrow to list all of the legal documents he alleged were confiscated and destroyed. He responded:

> I am unable to list every document that was confiscated, since Defendants did not follow procedures of providing an inventory sheet of each and every item confiscated. Though health care requests and correspondence to health care administrators germane to prosecuting of complaint were confiscated.

(DE # 52-3, at 3.) In Interrogatory number three, Defendants asked Devbrow to identify the civil action that was compromised by the loss of these irreplaceable legal papers, and he responded: "Devbrow v. Carroll, 1:07-cv-1355 (S.D.Ind. Filed October 17, 2007) " (*Id.*).

The court granted Devbrow leave to proceed against Defendants in their personal capacities on his claim that their removal and destruction of his legal materials denied him access to the courts. (DE # 18 at 3.) Section 1983 creates a cause of action for damages based on personal liability; a plaintiff must show the defendant's personal involvement or participation, or direct responsibility for the conditions of which he complains. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986). "Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's actions, has no application to § 1983 actions. *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993).

The court has accepted, for the purpose of this memorandum, that the documents related to 1:07cv1355 LJM which Devbrow refers to in his interrogatory responses were destroyed. But Defendants have submitted evidence that they had no personal involvement in or responsibility for any destruction of Devbrow's materials stored in the WCF property room, and Devbrow has not provided admissible evidence contesting their sworn statements. Because Defendants had no personal involvement in the destruction of Devbrow's property, they are entitled to summary judgment on this claim.

But even if Defendants had been personally involved in the destruction of any of Devbrow's legal papers that had been placed in storage, they would still be entitled to

summary judgment because Devbrow did not suffer an actual injury from the alleged destruction of these documents, as required by *Lewis v. Casey*. The record in 1:07cv1355 LJM establishes that on May 22, 2012, the district court granted summary judgment to the defendant because Devbrow did not file his complaint in that action until after the statute of limitations had expired. (1:07cv1355 LJM, DE # 161 at 9.)

Devbrow's interrogatory responses establish that the documents he alleges Defendants destroyed were "health care requests and correspondence to health care administrators germane to prosecuting of [his] complaint." (DE # 52-3 at 3.) These documents, however, bear no relevance to whether Devbrow timely filed his complaint in 1:07cv1355 LJM, and so would have had no impact on the district court's dismissal on limitations-period grounds. Even if Defendants had destroyed the documents described in Devbrow's interrogatory responses, he has suffered no actual injury to his efforts to prosecute 1:07cv1355 LJM because those documents would not have assisted his attorney in avoiding summary judgment in that case.

## RETALIATION CLAIM

In his amended complaint, Devbrow alleges that Defendants took his legal papers from him on December 14, 2009, and ultimately destroyed them, in retaliation for his having filed a lawsuit on November 19, 2009, against WCF officials. The court has already concluded that Defendants had no involvement in any destruction of any of Devbrow's property so his retaliation claims are limited to the removal of portions of his legal papers from his living area to storage.

Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the constitution. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). To prevail on his retaliation claim, Devbrow must prove that he engaged in a constitutionally-protected activity and that engaging in that activity was a substantial or motivating factor in Defendants' actions against him. *Mt. Healthy City School District v. Doyle*, 429 U.S. 274 (1977). If Defendants prove that a legitimate reason existed for their actions and that they would have taken the same actions regardless of whether Devbrow engaged in the protected activity, then he can prove retaliation only if he can show that the legitimate reason given by Defendants for the allegedly retaliatory act is pretextual. *Id.* at 575.

Devbrow alleges in his amended complaint that "the threat of a lawsuit from an incident that occurred on March 4, 2009, and filed on November 19, 2009, was the reason Defendants confiscated and destroyed papers taken on December 14, 2009." (DE # 16 at 6). Devbrow has not come forth with admissible evidence that he filed a civil action on November 19, 2009, what formed the basis for that action, or in what court it was filed. Defendants state in their declarations that they were not aware that Devbrow filed a lawsuit against other WCF officials when they removed his property from the dorm, and that they moved his excess property to the property room not in retaliation for Devbrow filing a civil complaint, but because he had too much stuff in his living area. (DE 52-1 ¶ 13, DE 52-2 ¶ 13.)

Because Defendants came forth with evidence that a legitimate non-retaliatory reason existed for the decision to remove Devbrow's excess property from his bed area and place it in storage, the burden shifted to Devbrow to come forth with evidence that the reason given by Defendants was pretextual, but Devbrow has come forth with no such admissible evidence. To the contrary, the evidence submitted by Devbrow supports the conclusion that the reason given by Defendants for removing his excess property from his living area was not pretextual. Devbrow submitted part of the IDOC property policy, which establishes that inmates are allowed to keep some legal materials in their living areas but that excess legal materials are to be boxed and removed to a storage area, (DE # 60-1 at 1-2), which fully comports with the reason given by Defendants for their actions. Accordingly, Defendants are entitled to summary judgment on the retaliation claim.

## CONCLUSION

For the foregoing reasons, the Court **STRIKES** Devbrow's Exhibit C (DE # 60-1 at 6), **GRANTS** Defendant's motion for summary judgment (DE # 52), and **DIRECTS** the clerk to enter final judgment in favor of Defendants and against Devbrow.

**SO ORDERED.**

Date: December 28, 2012

        s/James T. Moody_____
        JUDGE JAMES T. MOODY
        UNITED STATES DISTRICT COURT